7 N.J. Super. 488 (1950)
71 A.2d 902
RALPH HEYWARD ISHAM, PLAINTIFF,
v.
UNION COUNTY TRUST COMPANY, EXECUTOR AND TRUSTEE OF THE ESTATE OF HENRY HEYWARD ISHAM, DECEASED, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 20, 1950.
*490 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig appearing), attorneys for accountant, Union County Trust Company.
*491 Mr. Robert Carey, Jr., attorney for exceptant Ralph Heyward Isham.
Mr. Henry F. Schenk, attorney for Heyward Isham and Donald F. Hyde, guardian ad litem for infants.
STEIN, J.S.C.
Union County Trust Company filed its second account as trustee under the last will and testament of Henry Heyward Isham, deceased. Exceptions to the account were filed by Ralph Heyward Isham, the life beneficiary, and by Heyward Isham and Donald F. Hyde, guardian ad litem, remaindermen. The matter was referred to a master by consent on July 7, 1948. After several hearings were had before the master, the Union County Trust Company moved to strike certain of the exceptions on the primary ground that the issues raised by those exceptions had been resolved and adjudicated at an earlier accounting. The master ruled upon the motion and filed an ad interim report, denying the motion with respect to some of the exceptions and sustaining the motion with respect to others. Both the accountant and the exceptants claim grievance by reason of the master's rulings and the matter is now before me for resolution.
The testator, Henry Heyward Isham, died in 1922, and by his will he set up a trust, comprising substantially his entire estate, for the benefit of his only son, Ralph Heyward Isham, one of the exceptants. The condition of the trust was that his son should receive $3,500 each year until he attained the age of 30, at which time one-half of the corpus was to be turned over to him absolutely, and the income from the balance was to be paid over to him for life, with the remainder to his issue. The Union County Trust Company and Foster M. Voorhees were named as executors and trustees. The will was probated forthwith and both executors qualified. Voorhees died in 1927, and Union County Trust Company has continued to act since that time as sole executor and trustee.
On December 5, 1931, the trust company filed with the Court of Chancery its "First Account of Executors," the purpose of which was to account for its stewardship down to *492 November, 1930. Thereafter an addendum to this account was filed, bringing the account down to September 30, 1931. Exceptions to these accounts were filed by the beneficiaries and on July 12, 1932, the matter was referred to Samuel Powis, Jr., as master to take testimony and audit. While the hearings before that master were in progress, a second addendum to the account was filed by the trust company bringing that account down to the terminal date of August 1, 1933.
The then master considered all exceptions and on September 4, 1939, filed his report. Exceptions were taken and a decree confirming his report was entered on May 27, 1940. It is on this adjudication that the accountant now bases its claim of res judicata and estoppel in pressing its present motion.
A number of exceptions presently before the court involve transactions which occurred prior to May 27, 1940, the date of the decree confirming the previous master's report. Whether or not that decree conclusively precludes investigation into those transactions is the question now before me. The exceptions under attack, although many in number, may be grouped in general categories and will so be dealt with in this opinion.

RISING SUN BREWERY TRANSACTIONS.
The decedent, at the time of his death, was the owner of 3,549 shares of the Rising Sun Brewing Company, representing only about one-third of the total stock outstanding. In 1928, after dissolution of that company, Union County Trust Company took over certain of the assets of the company for the purpose of liquidating them for the benefit of all the stockholders. Its administration of the affairs of the Rising Sun Brewing Company was separate from its administration of the Isham estate. The interest of the estate in the Rising Sun trust was a minority one and there were other beneficiaries whose combined interests were twice as great. However, there was a direct relationship between the two trusts by reason of the estate's stock ownership, and the accountant, in its former account as executor and trustee of the estate, *493 showed what it had received for the benefit of the estate out of the assets of the Rising Sun trust. It is important to observe, however, that no formal accounting of the Rising Sun trust was filed at that time, nor was any such account ever filed until the present proceedings, when it was made the subject matter of the fifth section of the instant account.
The exceptants charge the accountant with failure to set forth sufficient information; negligent and improper conduct in permitting assets to become dissipated; failure to account for monies; improper dealings with one Seeber, a stockholder in the Rising Sun Brewing Company; and bad faith generally in connection with the administration of the affairs of the Rising Sun trust.
The accountant now seeks to invoke the rule of res judicata and estoppel by judgment as to all matters prior to May 27, 1940, the date of the decree on the prior account. In effect the accountant contends that the information disclosed collaterally in the earlier estate accounting should now be considered as an account of its administration of the Rising Sun trust. With this I cannot agree. The two trusts are separate and distinct. A different corpus and different beneficiaries are involved. Even the commencement and terminal dates of the several accounts differ materially. The decree confirming the master's report in the earlier estate account does not constitute an adjudication with respect to the Rising Sun account.
Furthermore, the trustee here seeks approval of transactions embracing the entire period of its administration of the Rising Sun trust. The beneficiaries should not be restricted or precluded from making inquiry into all transactions for which confirmation is sought.
In limine it might be said that had the accountant followed the same procedure in its prior accounting which it adopted here and had accounted for its administration of the Rising Sun trust as a companion to its estate account, all matters included in that account might now be res judicata. In view of the trustee's failure to do so, the present account must necessarily embrace the entire period of the Rising Sun trust.
*494 Accordingly, the life tenant's Exception No. 82, and subdivisions c, d, e and f thereunder, and the remaindermen's Exception No. 3 and subdivisions e and f thereunder should be permitted to stand with respect to the entire period of the Rising Sun trust, and the master's determination insofar as it is inconsistent with the foregoing, is overruled.

THE SELF PURCHASED MORTGAGES.
The exceptants charge the accountant with self dealing in that between 1929 and 1931 the accountant purchased with funds of the trust estate various mortgages held by the accountant as mortgagee, and caused said mortgages to be transferred to it as executor and trustee. All these mortgages are dated prior to and are set up in the former account of the accountant. The exceptants charge that the former account failed to disclose the fact of self dealing and that they should not now be precluded from litigating such self dealing. The accountant admits that the prior account did not directly reveal the fact of self dealing but says that "the opportunity to inquire further was available to them," that such self dealing could have been elicited during the prolonged litigation in the prior accounting, and that an examination of the vouchers given by the trustee in payment of these mortgages would have revealed the challenged transactions and that therefore the exceptants are barred from questioning the propriety of the investments.
I have examined the proceedings in the earlier accounting with some care. I am not persuaded that the issue of self dealing was ever raised at the hearing and nowhere does the issue appear as such in the exceptions filed to that account. Nor am I satisfied that the master in those proceedings was ever made aware of the fact of such wrongdoing, if it existed. There was nothing in the previous accounting which afforded notice to the exceptants thereof.
It is elementary that a fiduciary must make a full and complete disclosure of all transactions in relation to his trust. If the trustee has indulged in self dealing, such fact should *495 be clearly and specifically set forth in its account. It does not lie in the mouth of the trustee to say that the cestui could have discovered the self dealing by asking the trustee if it had done so. A cestui is not obliged to inquire as to this fact and neither is he required to examine every voucher to ascertain if such self dealing has been practiced by the trustee.
The recent case of Liberty Title & Trust Co. v. Plews, 6 N.J. Super. 196 (App. Div. 1950), is completely dispositive of the question. There the Court said: "We recognize that there is a public policy in favor of the stability and finality of decrees and that cestuis may justly be held responsible for matters apparent on the face of the account. We believe, however, that in the field of fiduciary relationships this policy should give way to the entrenched and wholesome public policy, of greater force, which prohibits such conduct by trustees, requires full and frank disclosure thereof, and sanctions reliance by cestuis upon their trustees without independent investigation to obtain withheld or omitted information."
The master's ruling with regard to the Ralph Heyward Isham Exception No. 76, and subdivisions a, b, c, d, e, f, and g thereunder, and the Donald F. Hyde and Heyward Isham Exception No. 2 and subdivisions a, b, c, d, e, f and g, is therefore sustained.

CONSOLIDATED MORTGAGE TRANSACTIONS.
At the time of his death in 1922, the decedent, through a holding company, owned numerous tracts of land in Elizabeth, Staten Island and Newark. Prior to the first accounting these lands were sold by the trustees to the Consolidated Corporation. The vendee paid part of the purchase price in cash and the estate took purchase money mortgages to secure the balance. Subsequently, viz., on April 18, 1928, the accountant loaned to the Consolidated Corporation the sum of $70,000, taking a mortgage as security on other property owned by that corporation in Elizabeth. The character of *496 this $70,000 mortgage differed from the other Consolidated mortgages in that the others were made to facilitate the liquidation of the estate, whereas this mortgage was given to secure an outright loan. When the first account was filed by the trustee, all Consolidated Corporation mortgages were listed as assets of the estate, including the $70,000 mortgage above referred to. Nothing was shown to differentiate that mortgage from the others.
The nature of these mortgages was thoroughly canvassed by the exceptant in the earlier accounting proceedings. However, inquiry with respect to the $70,000 loan served only to mislead. When the trustee was examined at that time concerning this mortgage, it stated that this obligation was a purchase money mortgage, when in fact it was not. Similarly, in a letter written by the trustee during the pendency of the first accounting proceeding, the trustee unqualifiedly described this obligation as a purchase money mortgage. There can be little doubt that the exceptant was misled in the earlier accounting and by reason thereof was deprived of sufficient opportunity to make a true investigation.
The exceptants challenge the propriety of this mortgage loan, asserting that the Consolidated Corporation was, at the time of the granting thereof, already indebted to the estate on other mortgage transactions, in a sum in excess of $150,000, and that it was a "needless risk further to load the estate with the obligations of one corporation so heavily indebted to the estate already." Whether the exceptants are correct in this contention is not for me to say at this time. However, I am inclined toward the view that they should be given the fullest opportunity to explore the transaction, and that the earlier determination of the Court of Chancery generally approving the first account should not stand as a bar, where, as in the case sub judice, the fiduciary was guilty of misstatement of fact, thereby lulling the exceptants into a state of inaction. To hold otherwise would place a premium on such conduct, and would reduce the function of an accounting to the level of a dangerous game which the beneficiary must approach at his peril.
*497 The exceptants charge that before and after August 1, 1933, the terminal date of the previous account, the Consolidated Corporation transferred all its assets to another corporation, when the former was in default on all its obligations to the estate, and that the trustee negligently stood by and permitted this to be done without objection. Nothing with respect to this appeared in the first account or in the testimony taken at that time. It may very well be that the exceptants are barred in respect of all such transactions occurring prior to August 1, 1933, but I am satisfied that the motion at this time is premature. Little is revealed by the record in the instant proceedings. The motion should be denied at this time, with leave to renew when the complete testimony is in. The master is therefore overruled insofar as he limited the examination on this subject to August 1, 1933.
The remaining exceptions challenging the trustee's conduct concerning the Consolidated Corporation mortgages should be limited to matters subsequent to August 1, 1933, and the master's rulings as to them are sustained.
At this point I deem it advisable to express my view on the subject of the terminal date of the previous account. It is urged by the trustee that by reason of the fact that the decree confirming the master's report with respect to the previous account was entered on May 27, 1940, that date was the terminal date of the earlier account. I cannot agree with this view. The account in that proceeding was filed on December 5, 1931, and two addenda were subsequently filed, the second bringing the account down to August 1, 1933. It was for this account, together with the addenda, that approval was sought. The judicial approval, subsequently granted, was on the account as filed. It did not and could not conclude matters which occurred between the terminal date of the account filed and the date of the decree. Else an accounting would become an anomalous proceeding, a trial in a vacuum. It is the account and the exceptions thereto which frame and form the issues to be adjudicated. If a trustee seeks judicial approval, he must first file his account. He *498 cannot claim justification of matters which subsequently develop, unless those matters are properly laid before the court and full opportunity is afforded to all interested parties to file their exceptions. To hold otherwise would serve to ensnare the feet of the unwary beneficiaries who, by relying on the account as filed, would find themselves debarred and concluded from litigating matters not appearing therein or wrongdoings subsequently committed.
Another compelling reason for fixing August 1, 1933, as the terminal date of the previous accounting is found in the fact that in the account now before the court, the accountant has fixed that date as the commencement date of its present account. It seeks approval of all transactions from August 1, 1933, to January 8, 1947, thereby acknowledging that there has been no conclusive prior accounting for that period. In a great many instances, it presents to the beneficiaries their first occasion to file their exceptions since the close of the earlier account, and full opportunity should be afforded them to examine into those transactions for which judicial approval now is sought.
Accordingly, the motion to strike the life tenant's Exceptions Nos. 75 and 78(a), and the remaindermen's Exception No. 4(a) should have been denied. The life tenant's Exception No. 78 and subdivisions (b), (c), (d), (e) and (f) thereunder, and the remaindermen's Exception No. 4 and subdivisions (b), (c), (d), (e), and (f) thereunder should be limited to matters which occurred after August 1, 1933. The master's determination insofar as it is inconsistent with the foregoing is overruled. In all other respects it is sustained.

FAILURE TO CLEAR TITLES.
The decedent, at the time of his death, was the owner of substantial holdings of real estate, title to which required perfection. On the previous accounting the failure of the trustee to clear these titles was called into question by the exceptant. The trustee's inaction was approved by the decree which ultimately was entered. This justification, for reasons previously stated herein, reflected court approval as of the *499 date of the last account, to wit: August 1, 1933. The beneficiaries once more except to the trustee's failure to act in this regard. The trustee moved to strike this exception, maintaining that when the Court of Chancery confirmed the master's decree in the earlier proceeding, it was reasonable for the trustee to continue this practice. Although the trustee may very well be right in this regard, nonetheless the exceptants should not be precluded from showing that in the light of subsequent changes in the real estate market, the trustee's inertia did not conform to the standard of reasonableness. The facts which moved the court to justify this policy of inaction in the earlier accounting, may be entirely absent in the present accounting. Conditions in the real estate market have materially changed since the prior accounting, and the exceptants should be permitted to show the demand for such land, the increased value thereof, and the loss, if any, sustained by the estate by reason of the trustee's inaction.
It is urged by the trustee that the expenditure of trust monies to clear the titles without a contract of sale would amount to an unlawful investment. Yet a trustee having an unproductive asset in the trust portfolio should not sit idly by for years and permit the value of such asset to be reduced to little or nothing by tax accumulations. Sufficient facts might be elicited before the master which would indicate a duty on the part of the trustee to have sought instruction from the court with regard to these lands.
The master's ruling on life tenant's Exception No. 81 and remaindermen's Exception No. 8 is sustained with respect to matters occurring prior to August 1, 1933, and overruled with respect to matters that arose subsequently.

DOREMUS AVENUE PROPERTY.
The trustee is charged by the beneficiaries with improvidently refusing to accept an offer of $7,500 for certain property owned by the estate located on Doremus Avenue, Newark, N.J. Although the exceptions are silent as to time, the testimony discloses that the offer was made on June *500 27, 1946. This is clearly within the period of the present accounting.
Accordingly, the master's refusal to strike life tenant's Exception No. 2 and remaindermen's Exception No. 5 is sustained.

ADDITIONAL EXCEPTIONS.
On September 9, 1948, an order was entered herein amending the exceptions filed by the life tenant and the remaindermen by allowing two additional exceptions to be added. These exceptions are set forth in said order as (a) and (b). These exceptions charge the accountant with negligent failure to foreclose a mortgage of Consolidated Corporation; negligent failure to appear and protect the estate's interest in certain condemnation proceedings against the land covered by said mortgage resulting in a loss of this asset; and negligent failure to ascertain the value of lands covered by a mortgage held by the trust estate before releasing part thereof, resulting in loss to the estate and in impairment of the remaining security. The master refused to strike these exceptions but limited their application to the period subsequent to July 31, 1935. The previous accounting period ended August 1, 1933. The master's ruling is sustained except as to the date which is corrected and modified to read August 1, 1933.

INSTRUCTIONS.
At the conclusion of his report, the master requested instructions with respect to a motion made by the trustee to suppress or strike out all testimony and proofs already taken before him in support of such exceptions as are stricken and, in the alternative, for summary judgment in favor of the trustee with respect to the said exceptions. It is my opinion that the motion to strike should be granted with respect to all proofs and testimony already submitted which, in accordance with this opinion, should have been rejected, and the master in preparing his final report is instructed to disregard all such improper matter.
Present order in accordance with the foregoing conclusions.